United States District Court
Southern District of Texas
**ENTERED**
September 15, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHISN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TERENCE D. JONES, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:22-cv-00269 |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Plaintiff Terence D. Jones ("Jones") seeks judicial review of an administrative decision denying his application for supplemental security income under Title XVI of the Social Security Act (the "Act"). *See* Dkt. 1. Before me are competing motions for summary judgment filed by Jones and Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration (the "Commissioner"). *See* Dkts. 12, 16. After reviewing the briefing, the record, and the applicable law, Jones's motion for summary judgment is **DENIED**, and the Commissioner's motion for summary judgment is **GRANTED**.

## BACKGROUND

Jones filed an application for Title XVI supplemental security income on July 6, 2020, alleging disability beginning on July 1, 2020. His applications were denied and denied again upon reconsideration. Subsequently, an Administrative Law Judge ("ALJ") held a hearing and found that Jones was not disabled. Jones filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit

their analysis to "(1) whether the Commissioner applied the proper legal standards; and (2) whether the Commissioner's decision is supported by substantial evidence on the record as a whole." *Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quotation omitted). The Commissioner uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id*. Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an

indicator of the claimant's maximum capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

The ALJ found at Step 1 that Jones had not "engaged in substantial gainful activity since July 6, 2020, the application date." Dkt. 8-3 at 16.

The ALJ found at Step 2 that Jones suffered from "the following severe impairments: depression, anxiety, back pain and asthma." *Id.*

At Step 3, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments. *See id.* at 17.

Prior to consideration of Step 4, the ALJ determined Jones's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant cannot climb ladders or scaffolds and cannot work at unprotected heights. Because of possible limited ability to read and write, job requires no reading and writing. The claimant is limited to simple, repetitive 1-2-3 step work, no direct public and only occasional/incidental interaction with coworkers, and work mainly with things not people. Further, the claimant is limited to indoors/climate-controlled environment and no exposure to concentrated smoke, fumes, chemicals.

*Id.* at 18.

At Step 4, the ALJ found that Jones "has no past relevant work." *Id.* at 22. The ALJ elicited testimony from a vocational expert ("VE") that "there are jobs that exist in significant numbers in the national economy that [Jones] can perform." *Id.* Based on the Medical-Vocational Guidelines, the ALJ explained that Jones is not disabled. *See id.* at 22–23.

## DISCUSSION

This social security appeal raises only one issue: whether the ALJ's RFC analysis is supported by substantial evidence. Jones argues that the ALJ's RFC is deficient for two reasons. I will address each argument in turn.

3

### A. Whether the ALJ Properly Evaluated Jones's January 25, 2021 Treating Medical Source Opinion

First, Jones argues that the ALJ "failed to properly evaluate the opinion of [his] treating medical source." Dkt. 12-1 at 9. The opinion at issue is a January 25, 2021 medical source statement. There is some confusion as to who completed this source statement—Dr. Richard Harmon or Nurse Practitioner Elliot Myers.[1] *See* Dkt. 16-1 at 7 n.3 (citing Dkt. 12-1 at 9–15). To avoid confusion, I will refer to this opinion as the "January 2021 Medical Opinion."

"On January 18, 2017, the Social Security Administration promulgated new regulations applicable to disability claims filed on or after March 27, 2017." *Williams v. Kijakazi*, No. 23-30035, 2023 WL 5769415, at *2 (5th Cir. Sept. 6, 2023). Because Jones filed for benefits after March 27, 2017, the ALJ was required to apply the new regulations. "These new regulations eliminate the old hierarchy of medical opinions, no longer provide for any inherent or presumptive weight, and do away with the examining and non-examining physician terminology." *Id.* Instead, in determining what weight, if any, to give a medical opinion, the ALJ must consider five factors: (1) supportability; (2) consistency; (3) the source's relationship with the claimant; (4) the source's specialty; and (5) "other factors that tend to support or contradict" the opinion. 20 C.F.R. § 416.920c(c). The most important factors are supportability and consistency. *See id.* § 416.920c(b)(2).

With respect to "supportability," "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Vellone ex rel. Vellone v. Saul*, No. 1:20-CV-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021). "As for consistency, the new rules provide that the greater the consistency between a particular medical source/opinion and the other evidence in the medical record, the stronger that medical opinion becomes." *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2),

---

[1] Both providers' treatment records were provided by the Harmon Medical Group and filed as Exhibit B3F. *See* Dkt. 8-10 at 1.

416.920c(c)(3)). "Simply put, consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.*

At a minimum, an ALJ's persuasiveness explanation should "enable[] the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." *Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 499 (S.D. Miss. 2021) (cleaned up). "Stated differently, there must be a discernible logic bridge between the evidence and the ALJ's persuasiveness finding." *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-CV-166, 2021 WL 3708047, at *5 (quotation omitted). Reviewing the record with these principles in mind, it is clear to me why the ALJ made the decision she did, and that such decision is supported by substantial evidence.

The ALJ's reasoning regarding the January 2021 Medical Opinion is as follows:

> A Medical Source Statement completed on January 25, 2021 noted that the claimant had lumbago. It was noted that the claimant had an inability to ambulate effectively. It was noted that the claimant suffered from chronic pain syndrome and had mild pain. It was also noted that the claimant had depression. It was opined that the claimant's symptoms would occasionally interfere with attention and concentration. It was opined that the claimant could occasionally lift up to fifty pounds and could occasionally carry up to twenty pounds. It was also opined that there would be frequent days that the claimant would need to miss unpredictably (Exhibit B3F). The Administrative Law Judge finds that this opinion is not wholly persuasive. The lifting and carrying opinion is somewhat persuasive insofar as it is consistent with light exertional work. However, the remainder of the opinion is not supported by or consistent with the record. The treatment records do not support such limitations.

Dkt. 8-3 at 21.

Jones contends this analysis is "overly conclusive" and that the ALJ "failed to conduct the minimum articulation regarding [supportability and consistency]."

Dkt. 12-1 at 11–12. With regard to supportability, Jones takes issue with the fact that "the ALJ did not cite to any specific evidence of record in her rejection of the [January 2021 Medical O]pinion." *Id.* at 12. Jones contends that "examination findings by Dr. Harmon['s group] establish the supportability of the limitations assessed by [the January 2021 Medical Opinion]." *Id.* With regard to consistency, Jones argues that "the evidence of record also establishes the consistency of the limitations assessed [in the January 2021 Medical Opinion]." *Id.* at 14. None of these arguments are persuasive.

To start, there is no requirement for the ALJ to discuss specific evidence of record when evaluating a medical opinion. *See* 20 C.F.R. § 416.920c(b)(1) ("We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually."). As Jones notes, "[s]upportability is an internal check that references objective medical evidence and supporting explanations that come from the source itself." Dkt. 12-1 at 12. (citing 20 C.F.R. § 416.920c(c)(1)). "Objective medical evidence means signs, laboratory findings, or both." 20 C.F.R. § 416.902(k). "Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, ***apart from your statements (symptoms)***. Signs must be shown by medically acceptable clinical diagnostic techniques." *Id.* § 416.902(l) (emphasis added). Yet, most of the evidence Jones cites as supporting the January 2021 Medical Opinion is nothing more than Jones's subjective statement of his symptoms. *See* Dkt. 12-1 at 12–13 ("He endorsed"; "He further reported"; "Plaintiff also endorsed"; "Plaintiff endorsed").

Moreover, while the paragraph quoted above contains admittedly conclusory statements, earlier in her decision, the ALJ summarized and contrasted the objective medical evidence from Dr. Harmon's office at length. For example, the ALJ noted that although Jones "had pain with range of motion[, was] tender at the lumbar spine," and used a back brace in May 2020, by the time of his September 2020 consultative examination, Jones

6

> was able to walk on his toes and heels and could squat to the floor and recover. He could perform tandem heel waling. He was able to bend over and touch his toes. He could get up and out of the chair without difficulty. He could get one and off the examination table without difficulty. He ambulated without difficulty. His gait was normal. . . . Straight leg raising was negative without pain. The claimant had normal grip strength and normal manipulative skills. There was no muscular atrophy. He had normal motor strength. Sensation was intact. All ranges of motion were normal. X-ray so the lumbosacral was normal.

Dkt. 8-3 at 19. The September 2020 consultative examination constitutes contrary medical evidence that precludes a finding of no substantial evidence. *See Ramirez*, 606 F. App'x at 777.

"[T]he ALJ's assessment and articulation of consistency and supportability must be read in full context of the RFC findings," not in isolation. *Teixeira v. Comm'r, SSA*, No. 4:21-CV-00003, 2022 WL 3130859, at *9 n.15 (E.D. Tex. July 12, 2022). Reading the ALJ's decision as a whole, I have no trouble discerning the ALJ's logic in crafting Jones's RFC the way she did. The ALJ considered the January 2021 Medical Opinion and rejected it, finding it unpersuasive because: (i) the "treatment records do not support such limitations" (Dkt. 8-3 at 21); and (ii) the opinion is inconsistent with the record, like the fact that Jones functions as his parents' caretaker. *See id.* at 20. It does not matter if I agree with the ALJ or if I would have crafted a different RFC. What matters is whether the ALJ's RFC is supported by the record, and I find that it is.

**B.    THE ALJ PROPERLY ACCOMMODATED JONES'S MENTAL LIMITATIONS**

Jones next argues that the "ALJ's mental RFC fails to accommodate moderate restrictions in concentration, persistence and pace, and the decision contains too little explanation to allow for meaningful review." Dkt. 12-1 at 16. I disagree.

First, Jones is incorrect to assert that the ALJ was required to account for the moderate limitations found at Step 2 in crafting the RFC. *See* SSR 96-8P (July 2, 1996) ("[T]he limitations identified in the 'paragraph B' and 'paragraph C'

criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). Second, the ALJ reasonably incorporated Jones's moderate limitation in concentration, persistence, and pace by limiting him to "simple, repetitive 1-2-3 step work, no direct public and only occasional/incidental interaction with coworkers, and work mainly with things not people." Dkt. 8-3 at 18. *See Bordelon v. Astrue*, 281 F. App'x. 418, 423 (5th Cir. 2008) (holding that "the ALJ's hypothetical question to the [vocational expert]" limiting the claimant to "rare public interaction, low stress, and simple, one- to two-step instructions reflect[ed] that the ALJ reasonably incorporated [the claimant]'s moderate concentration, persistence, and pace limitations").[2]

Jones contends that this was not enough—that the ALJ failed to consider that "simple, repetitive, assembly-line work might well require extensive focus or speed." Dkt. 12-1 at 17 (quoting *Eastham v. Comm'r of Soc. Sec. Admin.*, No. 3:10-CV-2001, 2012 WL 691893, at *8 (N.D. Tex. Feb. 17, 2012)). But in *Eastham*, the ALJ did not "clarify the extent and specific respects in which Plaintiff's concentration, persistence, and pace is moderately deficient." *Eastham*, 2012 WL 691893, at *9. Here, the ALJ observed that Jones "exhibited normal mentation," had intact memory, had fair insight and judgment despite impaired concentration, served as his parents' caretaker, and did not seek out treatment for his mental impairments until November 2020. Dkt. 8-3 at 19–21. In light of the whole record,

---

[2] The record reflects that upon completing her questioning, the ALJ afforded Jones's representative the opportunity to question the vocational expert. Jones's representative asked the vocational expert a question about absenteeism and a question about a sit/stand option at the jobs that the vocational expert had identified as falling within the ALJ's hypothetical, but Jones's representative never asked a question regarding concentration, persistence, or pace. *See* Dkt. 8-3 at 54–56. As a result, Jones's "representative was afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical question (including additional disabilities recognized but omitted from the question) such that the hypothetical question [on which the RFC is based] was proper for that reason as well." *Bordelon*, 281 F. App'x. at 423 n.7 (cleaned up).

8

the ALJ's RFC constitutes a credible choice, and Jones points me to no contrary evidence other than his own subjective statements, which the ALJ found unsupported by the record. *See id.* at 18.

\* \* \*

For all these reasons, I find that the ALJ's decision was supported by substantial evidence.

## CONCLUSION

Jones's motion for summary judgment (Dkt. 12) is **DENIED**, and the Commissioner's motion for summary judgment (Dkt. 16) is **GRANTED**. I will enter a Final Judgment separately.

SIGNED this 15th day of September 2023.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE